[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action, the plaintiffs claim that the defendant Ericson Agency (agency), an insurance agency licensed in the state of Connecticut, and Karen Russell, a licensed insurance agent employed by the agency, are responsible for losses the plaintiffs suffered as a result of being underinsured. The defendants have moved for summary judgment on the grounds that: 1) as a matter of law the defendants owed no duty to provide advice to the plaintiffs concerning their automobile liability coverage or their umbrella insurance coverage; 2) there is no proximate cause between the claimed negligence and the alleged loss; 3) the plaintiff Maurice Grossenbacher lacks standing; and 4) there is no evidence of a fiduciary relationship between the parties. In the companion matter, Mary Grossenbacher and MauriceGrossenbacher, doc. no. 76212, the defendant Hartford Insurance Company of the Midwest moved for summary judgment on similar grounds that it owed no duty to these plaintiffs.
The defendants filed this motion on October 1, 1999, with a memorandum of law and supporting deposition testimony and pleadings. The plaintiffs filed an objection on October 22, 1999. The court heard argument on February 21, 2000.
The following facts pertinent to this motion are undisputed. In December 1996, the plaintiff Mary Grossenbacher was involved in a motor vehicle accident in which one of the occupants of the other vehicle, namely David Nash, received serious physical injuries. Nash brought a civil action against this plaintiff for those CT Page 5085-x injuries. That action concluded in a stipulated judgment against Mary Grossenbacher in the amount of $250,000. At the time of the accident, Mary Grossenbacher and Maurice Grossenbacher were named insureds of an automobile policy issued by the Hartford Insurance Company of the Midwest (the Hartford). The liability limit of that policy was $100,000 per person and $300,000 per accident. The Hartford paid $100,000 of the stipulated judgment. Under the terms of the stipulated judgment, Mary Grossenbacher paid $50,000 to Nash on July 15, 1998, and was ordered to pay $100,000 to Nash on or before November 30, 1999.
The automobile insurance policy in effect at the time of the accident was procured by the plaintiff Maurice Grossenbacher through his membership in the American Association of Retired Persons without the intervention of either the defendant agency or the defendant Russell. At the time of the accident the plaintiff Maurice Grossenbacher was a named insured on a homeowner's policy issued by Patrons Mutual Insurance Company. That was the only policy procured through the defendant agency.
The plaintiffs brought this action in two counts, alleging that the agency and Russell were negligent and breached their fiduciary duty towards the plaintiffs by failing to advise them of the inadequacy of their insurance. The resulting damages, the plaintiffs claim, are the use of the personal assets to satisfy the judgment, the additional attorney's fees and emotional distress.
In their motion for summary judgment the agency and Russell argue four points. They first claim that the plaintiff Maurice Grossenbacher lacks standing to bring this action. The plaintiffs do not respond to this claim in their opposition to the motion. The defendants also claim that they owed no legal duty to either plaintiff regarding their automobile liability coverage or any excess or umbrella coverage. The plaintiffs dispute this claim. The third claim raised by the defendants in their motion is that even if a duty as to excess or umbrella coverage existed, there is no proximate cause between the breach of that duty and the loss. The plaintiffs dispute this claim. Finally, the defendants claim that no evidence exists of a fiduciary relationship between the plaintiffs and defendants. The plaintiffs dispute this claim.
Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue CT Page 5085-y as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49; Alvarez v. NewHaven Register, Inc., 249 Conn. 709, 714 (1999); Rivera v. DoubleA Transportation, Inc., 248 Conn. 21, 24 (1999); Orkney v.Hanover Ins. Co., 248 Conn. 195. 201 (1999). A "material" fact is one which will make a difference in the outcome of the case.Morascini v. Commissioner of Public Safety, 236 Conn. 781, 808
(1996). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney, 168 Conn. 431,433 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Dowling v. Kielak, 160 Conn. 14, 16 (1970); Dorazio v.M.B. Foster Electronic Co., 157 Conn. 226, 228 (1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party."Connecticut Bank Trust Co. v. Carriage Lane Associates,219 Conn. 772, 781 (1980).
Because it implicates jurisdiction, the court must first address the issue of Maurice Grossenbacher's standing. See Castrov. Viera, 207 Conn. 420, 429 (1988). While the plaintiffs do not specifically address the defendants' claim that Maurice Grossenbacher has no standing in their opposition papers, they do assert that his personal assets are exposed as a result of the negligence of the defendants. Standing exists when a party has "some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . ." (Citations omitted.) Community Collaborativeof Bridgeport, Inc. v. Ganim, 241 Conn. 546, 553 (1997). In order to establish standing a plaintiff must show he is the proper party to request an adjudication of the issues. To show he is the proper party, the plaintiff must make "a colorable claim of [a] direct injury [he] has suffered or is likely to suffer. . . ." Id., 553-54. Here, Maurice Grossenbacher has made a claim that as a result of the defendants' failure to advise him of appropriate coverage, he has lost personal assets jointly owned with his wife. The court finds that Maurice Grossenbacher meets the standing requirement.
The defendants argue that based upon the undisputed facts, they owed no duty to the plaintiffs. The particular facts they rely CT Page 5085-z upon are that the plaintiffs did not procure the automobile insurance from the defendants nor did the plaintiffs ask the defendants to procure automobile or excess/umbrella insurance on their behalf. They further cite the additional fact that there is no allegation of negligence as to the homeowners insurance which was procured through the defendants. The plaintiffs respond more generally that the defendants owed them a duty to exercise reasonable skill, care and diligence to see that they had proper coverage. They rely on the fact that the defendant Russell testified that had she had the Grossenbachers' file transferred to her she would have gotten in touch with them to discuss coverages and other types of insurance. Since she denies having their file transferred to her, she did not do so.
Duty is a requisite element of a claim of negligence. See Lodgev. Arett Sales Corporation, 246 Conn. 563, 571 (1998). The question of whether a duty exists is a question of law; only if there is a duty does the question of a violation of that duty reach the trier of fact. Petriello v. Kalman, 215 Conn. 377,382-83 (1990). In deciding whether a duty exists, the count must consider the foreseeability of the harm.
 Although it has been said that `no universal test for [duty] ever has been formulated'; W. Prosser W. Keeton. [Torts (5th Ed. 1984)] § 53, p. 358; our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. `The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?' . . . Frankovitch v. Burton, 185 Conn. 14, 20-21, 440 A.2d 254 (1981); Noebel v. Housing Authority, 146 Conn. 197 200-201 148 A.2d 766 (1959); Orlo v. Connecticut Co., 128 Conn. 231 237, 21 A.2d 402
(1941). . . .
 "A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally CT Page 5085-ba `foreseeable' yet for pragmatic reasons, no recovery is allowed. See, e.g., Maloney v. Conroy, 208 Conn. 392, 400-401, 545 A.2d 1059 (1988) (looking beyond foreseeability, this court imposed limitations on the right of a bystander to recover for emotional distress that allegedly resulted from medical malpractice of doctors in their treatment of the plaintiff's . . . mother). A further inquiry must be made, for we recognize `that "duty" is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.' W. Prosser W. Keeton, supra, § 53, p. 358. `While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree.' . . . Maloney v. Conroy, supra, 401-402. The final step in the duty inquiry, then, is to make a determination of `the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results.' W. Prosser W. Keeton. supra, § 43, p. 281." RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 385-86. 650 A.2d 153 (1994).
Jaworski v. Kiernan, 241 Conn. 399, 405-06 (1997).
There is some further guidance from the Supreme Court in determining whether a duty exists between the plaintiffs and defendants in this case. An insurance broker is an agent of the insured in negotiating for a policy with an insurer. SeeMishiloff v. American Central Ins. Co., 102 Conn. 370, 379
(1925). As an agent for the insured, the broker "owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting the insurance, and any negligence or other breach of duty on his part which defeats the insurance which he undertakes to secure will render him liable to his principal for the resulting loss." Ursini v. Goldman, 118 Conn. 554, 559 (1934). Further:
 Where he undertakes to procure a policy affording protection against a designated risk, the law imposes upon him an obligation to perform with reasonable care the duty he has assumed, and he may be held liable for loss properly attributable to his default.
Id. In Lewis v. Michigan Mutual Ins. Co., 154 Conn. 660, 664
CT Page 5085-bb (1967), the court cited the above authority and noted also,
 Once . . . the insurance is procured, the agency relationship between the insured and the broker terminates, and the broker is without any authority to do anything which further affects the insured unless expressly or impliedly authorized by the insured to do so.
Applying the above principles to this case, it is difficult to see the duty owed by these defendants to the plaintiffs. The insurance policy procured by these defendants on behalf of the plaintiffs is not the subject of the complaint against them. There is no allegation that the defendants were negligent in procuring the homeowners insurance policy. There is no evidence in their opposing papers and supporting documentation[1] that the defendants were negligent in procuring the homeowners insurance policy or that the defendants undertook to procure other insurance on behalf of the plaintiffs. See Home Ins. Co. v.Aetna Life Casualty, 235 Conn. 185, 202 (1995) ("[a]lthough the party seeking summary judgment has the burden of showing the non-existence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue"). The only allegation of negligence is that the defendants failed to advise the plaintiffs as to adequate coverage. Under the established Connecticut law, these defendants as insurance brokers do not automatically have a duty to advise the plaintiffs as to adequate coverage. The plaintiffs argue that there was a special relationship between these defendants and them which created a fiduciary relationship and a duty to advise. Absent such a relationship no duty exists from the defendants to the plaintiffs in this action.
Here, the defendants claim that under the undisputed facts and the applicable law no fiduciary relationship existed between them and the plaintiffs. Relying on the deposition testimony of the plaintiffs, the defendants argue that the facts do not support the plaintiffs' claim of such a relationship. The plaintiff Maurice Grossenbacher testified that after his insurance agent, Robert Hunt, retired from the defendant agency in 1986 he believed his insurance was transferred to the defendant Russell. Since that time, he never met with the defendant Russell and spoke with her only once. He recollected generally that whenever CT Page 5085-bc he got a renewal policy he was offered the opportunity to call, but he did not recall ever having called. The plaintiffs offered the following testimony to support their argument that a fiduciary relationship existed. According to the plaintiff Maurice Grossenbacher, the defendant agency had written the plaintiffs' homeowners insurance for years and at one time had procured the automobile liability insurance. The defendants never discussed the amount of coverage the plaintiffs maintained, and no advice was given regarding increasing their coverage or procuring excess or umbrella insurance. Defendant Russell testified that she was not the agent for the plaintiffs, but had she been she would have been in touch with them to review their coverages and other types of insurance. Neither she nor anyone from the defendant agency was in touch with the plaintiffs since 1986.
While it is true that the Supreme Court has "specifically refused to define a fiduciary relationship in precise detail and in such a manner as to exclude new situations," it has set forth the characteristics of such a relationship as well as the attendant obligations. (Internal quotation marks omitted.) Alaimov. Royer, 188 Conn. 36, 41 (1982). Recently, in Murphy v.Wakelee, 247 Conn. 396, 400 (1998), the court reaffirmed those fiduciary obligations:
 A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him. Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence.
(Citations omitted: internal quotation marks omitted.) As to the specific issue of whether an insurance agent owes a duty to advise, there is no Connecticut precedent.
Citing three Superior Court decisions, the plaintiffs propose CT Page 5085-bd that the duty to advise about the adequacy of coverage depends upon whether a special or fiduciary relationship exists between the parties. In those three cases, the court was confronted with the issue on motions to strike. See Katz v. Frank B. Hall Co.of Connecticut, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 084271 (October 30, 1987,Cioffi, J.) (3 CSCR 25); Winter v. Nationwide Mutual Ins. Co., Superior Court, judicial district of Litchfield, Docket No. 049205 (May 24, 1990, Pickett, J.) (1 Conn.L.Rptr. 668); Sportsmen'sParadise v. Peerless Ins. Co., Superior Court, judicial district of Litchfield, Docket No. 052606 (February 5, 1992, Dranginis,J.) (6 Conn.L.Rptr. 44). In all three cases, the courts noted that the issue of whether a fiduciary relationship existed was a question of fact not properly decided on a motion to strike. They all also cited a 1984 decision from the Appellate Division of the New Jersey Superior Court along with the above Connecticut Supreme Court authority on fiduciary relationships. The New Jersey decision includes the following language:
 Any individual seeking insurance should be able to rely on the expertise of the agent, regardless of the prior contract between the parties. The fiduciary nature of such a relationship should not depend solely upon the length of the relationship. Because of the increasing complexity of the insurance industry and the specialized knowledge required to understand all of its intricacies, the relationship between an insurance agent and a client is often a fiduciary one. Agents should be required to use their expertise with every client, not only those with whom they have a longterm relationship.
Sobotor v. Prudential Property Cas. Ins., 200 N.J. Super. 333,341, 491 A.2d 737 (1984).
In Sobotor, the insured brought suit against the insurer and insurance agent for failing to advise him of the availability of higher amounts of uninsured-underinsured motorist coverage. The trial court found for the insured and ordered the policy reformed. The facts of Sobotor, are, however, significantly different from the facts here. In that case, the plaintiff met with the insurance agent to discuss coverage and requested the "best available" package of automobile insurance coverage. Without advising him of the available options, the insurance agent provided the plaintiff with the statutory minimum limits of uninsured motorist coverage. The plaintiff was in a serious CT Page 5085-be automobile accident where the offending driver maintained minimum liability coverage. The court denied cross motions for summary judgment, finding the existence and breach of a duty on the part of the insurance agent, but also finding unresolved issues of proximate cause as well as the actual language used by the plaintiff in requesting insurance. At trial, the court found in favor of the plaintiff on proximate cause. On appeal. the issue was the existence of a duty and the Appellate Division affirmed the trial court's finding on that issue.
Here, the plaintiffs never discussed automobile insurance coverage with Russell, and there is no evidence that they ever asked the agency for the best available coverage. In fact, the automobile coverage was not obtained through these defendants. These defendants only procured the plaintiffs' homeowners' insurance, which was not implicated in the underlying automobile accident for which the plaintiff Mary Grossenbacher was found liable. There is no evidence that the plaintiffs ever requested that the defendants provide a full review of their insurance coverages. Without facts similar to those in Sobotor, this court will not impose a duty on the defendants that provides the plaintiffs with protection to which they are not entitled. Based upon the undisputed facts as to the relationship between the parties and under the applicable principles of law, the court finds that as a matter of law no unique degree of trust and confidence existed between the parties, nor did the duty of the defendants to the plaintiffs extend to providing unsolicited advice on coverage with regard to policies not procured through them.
In light of its finding as to the absence of a duty owed to the plaintiffs by the defendants, the court does not address the other grounds raised in the defendants' motion.
The motion for summary judgment is granted.
DiPentima, J.